This is 525-0575, Kennard v. Ballard. Mr. Dunham, you may proceed. Thank you, Your Honor. Counsel, may it please the Court. I've got a frog in my throat, so I might have to deliberately use my water. This is a case involving a photograph taken of an 11-year-old girl. We allege in the complaint, and it has to be taken as true, that she was severely handicapped and very limited in her ability to take care of herself. There is no dispute that the defendant was on the premises of a pet grooming and dog kennel agency pursuant to the Department of Agriculture. Her ability to investigate was there, at least under the pretext of doing an investigation. And that's during, while the defendant was there, the photograph was taken. The complaint was met with a combined 2619-2615 motion. The 2619 motion alleging, essentially, sovereign immunity and statute of limitations. And then the 2615 tagged the sufficiency of the complaint. The trial court granted the 2619, indicating that the 2615 was moot. I, from my reading of the briefs, I'd like to focus on the sovereign immunity argument, because it doesn't seem to me, other than the challenge of whether or not we had pled intrusion upon seclusion, it didn't seem to really join the issue as to statute of limitations. And I'd like to focus, then, on sovereign immunity. It seems to me, as to sovereign immunity, it really comes down to this. Was the defendant, as a matter of law, acting within the scope of her duties when she took the photograph? If this court agrees with the trial court that she was doing that, then you should affirm it. And that would be the end of the case. One of the things I think is unique about this case is that the trial court, even though we asked for that below, if the trial court had any issues with the facts pled, we asked for liberty to replead, and the trial court didn't think that that was necessary. What benefit would that have given you? Well, very good question. In our rebuttal brief, we cite the standard that the court, the case should not be dismissed with prejudice when, quote, it clearly appears that no set of facts can be proved under the pleading which would entail the plaintiff to release. Now, we did plead that this 11-year-old girl was severely handcuffed, and she had limited ability. So that gives me, I think, some liberty in perhaps explaining what I think, given those allegations, that we potentially could have pled. How does that help your sovereign immunity claim if you had the ability to file an amended complaint? Okay, fair enough. I raised in our brief, I raised the argument that as I understand the position taken by the defendant, that position is, look, she had the authority to take a photograph. That's what she did. It doesn't make any difference what kind of photograph she took. It's protected by sovereign immunity. I raised a hypothetical. Now, it's not an alleging complaint, but just to illustrate the point. Are they taking the position that this little girl had been nude and had been coming out of the shower, and this woman took the photograph? She has the ability to take photographs, but isn't there some kind of limitation on her ability to take photographs? Now, I don't know whether they're taking that, what I consider to be a very extreme position or not, but I do think that there's limitations. My question is, you claim that they were not within the scope of their authority. Okay. That's how you started out your argument. Right. My question to you is, and you said you weren't allowed to amend the complaint. Right. What would you have said in an amended complaint that would have gotten you out of the umbrella of sovereign immunity? Fair enough. And here's what I, if I had the ability to amend. When you're bringing complaints, challenging somebody's intent to do something, and you try, at least I do, I try and lead a plea as little as I possibly can, because the more facts you plead, the more easy it is for the defendant to defend. But if you might remand this case and say, okay, the plaintiff should have been allowed to amend, I would have alleged that there was a long-term relationship between Ballard and L.J.'s father that went going back several years, and an element of hostility developed. Let me just stop you. Is any of this in the record? No, it's not, but you're asking me if I had. Well, I want to know based on the record, because we're here because you claim, you started out by saying sovereign immunity doesn't apply. Right. So I'm assuming that there's something in the record that allows you to make that claim, other than just taking a photograph. Well, there's nothing in the record other than the allegation that she's severely handicapped. And how does severely handicapped take you out of what this agricultural employee was doing? Okay. Because of the handicap? Yes. I think if the case went to trial, I would introduce evidence of the hostility, which I think would be admissible. But I would also introduce evidence that this woman, this little girl, was very, very insecure, extremely insecure about her handicap and her limitations. Okay, but don't we have to look at the conduct of the Department of Agriculture person? Yes. Okay, so I'm having trouble making the jump from the Department of Agriculture person being in the scope of her employment to a disabled child. If the disabled child was on the property where she was supposed to be, when she was supposed to be, and the agent was the agricultural person, was where she was supposed to be, when she was supposed to be, how do we get past sovereign immunity? Well, number one, it wasn't necessary for Ms. Bower to take that particular photograph in order for her to perform her duties. Completely unnecessary. And why do you say that? Because she's not there, as I point out and I agree, as an investigator of whether the child labor laws are being violated. She's there to look at dog kennels and whether the animals are being properly groomed, properly stored, et cetera, et cetera, et cetera. The L.K.'s presence there is completely, totally irrelevant to her investigation. So she goes ahead and takes the photograph anyway. I'm sure she would probably claim at trial, well, that was just inadvertent. Can they take them anecdotally if they're taking a picture of the kennel and the child's around the kennel? Are you saying they cannot take a picture of the child? I'm saying there's an issue of fact as to why she took that particular photograph. I'm sure she's going to say, well, that was just, that she just happened to be there and that wasn't the reason. We're going to say that it's obvious that this girl was developmentally disabled. She did not like to want to have her photograph taken. She particularly didn't want to have her photograph taken by somebody she didn't know, taken and put in some kind of government file somewhere, and she had no understanding of how it ever might be used in the future. And that's the point. And that's why I think we need to, we can't be making judgments as a matter of law. If we can prove that, then there's no sovereign immunity. I'd like to remind the court of this case in Hoffman v. Yack, which is a very often cited case that this court recited many years ago. And here's what the appellee says in their brief. They list a whole bunch of things that I actually knew Rich Hoffman. He turned out to be a client of mine. And they say in their brief at page 18, all of these things that Yack did was beyond the scope of Yack's authority. Okay, number one, false accusations concerning Hoffman's professional competency. Well, Yack's supervisor had a right to make judgments about Yack's competency, but the point was Yack distorted his ability to do that and intentionally made false accusations in order to distort the actual circumstances. That Yack, that Hoffman had racist views. Here he is, a teacher at SIU, whether he's got racist views or not. That's something that Yack would have had the duty to maybe investigate, maybe make findings on. But the allegation was that Yack was not doing that because he really believed that he had racist views. He was doing it so as he could attack Hoffman, that Hoffman had sexual aberration conduct. Well, if he's engaged in these kinds of activities, particularly with students, that's something that Yack would be within the scope of his duties to make findings on that. But the simple fact of the matter, the allegation was he wasn't doing that because he was concerned about whether he was involving himself with students. He was making false accusations about his sexual aberration. Lack of integrity. Well, certainly a supervisor in the scope of his duties would be able to make findings and draw conclusions about the lack of integrity of an employee. But the simple fact of the matter was he was abusing his authority, and by abusing his authority in an intentional and malicious way. Let me ask you this. If an inspector's there taking pictures of the cages, taking pictures of the kennel, how is the inspector to know that this person who happens to be in the picture has aversions to photography or aversions to how is that? And that's an issue of fact, Your Honor. I don't think that's something this court or the trial court can make a finding as a matter of the law. In your prayer for relief, you seek damages and compensatory and punitive damages. Yes. Doesn't that make this a claim against the estate or against the estate, not estate, a claim against the estate that would be barred by sovereign immunity? No, I don't think so, Your Honor. One of the problems that you have to look at is who do we name as a defendant? We're not naming the estate. Who are we seeking damages from? We're not naming the estate. This is state. We're only seeking damages from this particular defendant. And we're sincere about that because of the hostility that's been long going between this family and this particular defendant. But you don't plead any of that. Well, I understand that. You don't complain. And that's why I'm back to under no set of facts is it possible for the plaintiff to seek relief. All we're asking for is the ability to amend and say that as a matter of law, you can't say from this record that as barred, there's no set of facts on which we can get out from under sovereign immunity. And I think there is. Is that what the court said? This is 619, which means there's an affirmative matter that bars bringing the lawsuit. So the affirmative matter that the court found, as I understand it, was the sovereign immunity and the one-year statute. It did not find a 615 a violation. Correct. But Illinois is a fact pleading state, right? Right. And you plead in your complaint that the defendant had the right to inspect this kennel and that she was where she was supposed to be at the time and that she photographed the child while she was in a non-public access area. Right. How does a non-public access area make it such that she's not performing her job? She's at the kennel. And back to my point, Your Honor, if it had been a nude photograph, we wouldn't even be here. The point is that I think we can prove that she took that photograph for the purpose of not only embarrassing the father, but to embarrass that little girl. But why didn't you plead that? Well, I probably should have, but we don't do that at this earliest stage, Your Honor. Well, as I said before, Illinois is a fact pleading state. How do we know as we sit here what it is you are going to plead in the future? Your Honor, I do plead that she's disabled, she's limited, and all of this evidence, which now you're saying we're pleading facts, all of this evidence that it would have been extremely embarrassing to her and it would have been obvious to anybody taking that photograph that she would not have enjoyed having some stranger in those circumstances take that photograph. That would be relevant evidence. If you put it. No, I'm just saying all I've read was she was disabled and had limited ability to care for herself. And then we would go to trial and that evidence that I just told you about, that would come in. It would be relevant to that allegation. You've made reference a couple of times that if she was nude, that would have been a whole different set of circumstances. But if she's nude, that puts the inspector on notice, I'm not taking this picture. If the kid was in the cage like she's locked up or something, that might be a question that the inspector. But here the kid just happened to be in the picture. It's a picture of the kennels and cages. The kid just happens to be in the picture. That's a fact. You're making a fact determination, which is not appropriate at this level or not appropriate in giving a state of the record in front of the trial court. We're looking at the pleadings and giving a chance. I think we can prove to the satisfaction of the jury that this photograph was taken maliciously. Did you ask for leave to amend before the ruling on your motion? What I did was I said, if, Your Honor, if you are troubled and if you're looking for more facts, we would like, please don't dismiss with prejudice because we will allege additional facts. But that is not a part of your appeal. That you were denied that opportunity. Well, it is in the sense that he dismissed the case with prejudice. No, but you haven't filed a motion that we can review. Have you? I'm looking for that. I haven't filed a motion. You have not. But I fully, if you see the case my way, I fully expect the court to remand and say that we've got leave to reclaim if you feel it's necessary. Or give the trial court discretion to give leave to reclaim. Questions? No other questions, thank you. Questions? Okay. All right. You may proceed. Thank you, Your Honor. May it please the Court, I'm Valerie Quinn on behalf of the Department. You have to speak up. I'm Valerie Quinn on behalf of the Department of Agriculture. Ms. Ballard, Your Honor. Mr. Pinard. Are you with the Department of Agriculture or the Attorney General? I'm the Attorney General. Yeah. But I'm representing the Department and Ms. Ballard. Yes, ma'am. Okay. Mr. Pinard claims that Ballard committed an illegal act by taking a photo of L.K. cleaning the animal cages. And forgive me, I hadn't thought that L.K. was a young boy. At least that was my impression from the record. So I will just refer to the child by the initials. Mr. Pinard does agree that as an inspector for the Department of Agriculture, Ms. Ballard had the authority to be present on the premises and to take photographs of the conditions in which the animals were being held. That was part of her official duties. But he asserts that taking a photograph that included L.K. was wholly unrelated to her investigation. That is incorrect. She was carrying out her duties under the Animal Welfare Act to ensure that Mr. Pinard was complying with his obligations as a licensee of a boarding and grooming facility under Section 60518. And the very first obligation listed in that provision is to maintain sanitary conditions for the animals in the licensee's care. So it was squarely within Ms. Ballard's duties as a state investigator to document how Mr. Pinard was fulfilling his obligation to provide a sanitary environment for those animals. Given the caption that Mr. Pinard alleges was on the photograph, hallway to the back, kid cleaning cages, it appears that Ms. Ballard had no idea that the child cleaning the cages was Mr. Pinard's child. What the child appeared to her to be doing was no different than what an employee would have been doing, cleaning cages. If Mr. Pinard didn't want photos taken of his child, he should have directed an employee to clean those cages or he could have done it himself rather than offloading his responsibilities onto a fifth grader. Second, the circuit court was not wrong to dismiss the complaint on the additional ground of untimeliness because the way Mr. Pinard drafted his complaint made it appear that he was asserting one of the invasion of privacy courts requires the element of publication, and those have a one-year statute of limitations, as the court knows. But you concede now that it's intrusion upon seclusion and the one-year does not apply. Exactly, Your Honor. And Mr. Pinard expressly told this court on page 4 of his opening brief that it should consider intrusion upon seclusion, and that alone, it's just that his reply brief made it seem a little ambiguous whether that was still coming up or not. So he waived that. He waived what? The issue of other statute of limitations. I'm sorry, statute of limitations and any tort that would require publication, the one-year statute of limitation torts. But the trial court dismissed on the one-year statute of limitations, and you would agree that if it's intrusion upon seclusion, that portion of the order would be wrong. That's correct, Your Honor. Okay. Mr. Pinard's complaint failed to state a cause of action, and this court may affirm on any ground that appears in the record, and that deficiency is a matter of record. He did not allege any kind of highly offensive prying into L.K.'s affairs or the child's physical boundaries. The child was in an animal boarding facility into which, at a minimum, employees could come and go as well as the Department of Agriculture. Investigators could come and go. The child was not in a secluded bathroom enjoying a warm shower. The child appeared to be working. Beyond that, Mr. Pinard did not allege that the snapping of L.K.'s photo would be highly offensive to a reasonable person, which is an objective standard. Instead, he specified that it was because of the child's age and particular disabilities that the child was allegedly so upset at having that picture snapped. Dismissal for failure to state a claim under 2615 would have been appropriate, and this court may affirm on that ground as well. Well, the court found it was moot. Yes. Because the court was dismissing on the other two grounds it declined to rule on, it was moot. With that dismissal on those other grounds, 615 was moot. All we're saying is that because the deficiency in the pleading appears in the record, if this court needed to, it could rely on that ground as well because it's a matter of record. The court is correct. In order to review it for 2-615, we would find that there was no sovereign immunity. We would have to set that part of the order aside as well. Right. You're not asking us to do that. Oh, no. No. Just shoring up the back end for you, Your Honor. That's all. Okay. Okay. I mean, he said no facts to show she exceeded the scope of her authority through wrongful actions. The duty she allegedly breached was not owed to the public generally, you know, except independent of her state employment, and her complaint of actions involved matters ordinarily within her normal and official employment functions for the state. When the state filed its motion to dismiss, is there anything in the record where plaintiff asked to amend the complaint? That doesn't appear in the record. This was a counsel hearing in front of the circuit court, and the court issued its order. And, I mean, apparently there was a court reporter at the hearing, but there's no indication that he sought leave to replete. And what he did was he turned around and filed his notice of appeal the following day instead of filing a motion to reconsider and asking for leave to replete and perhaps attaching an amended complaint, seeking leave to file it. None of that is present here. Okay. Your Honor, for the reasons stated in our brief and because the circuit court's judgment could be affirmed because the action was untimely, we fail to state a claim and sovereign immunity squarely bars it. Unless the court has further questions, we urge the court to affirm. Was the picture that was attached to the plaintiff's complaint the same photograph that was in the Department of Agriculture files? That is my understanding, Your Honor, that photograph. All right. I have no questions. Okay. Thank you very much for your argument. Mr. Dunham? I'll be very brief, Your Honor. Okay. If you take a look at the photograph attached to the complainant's Exhibit A, if you didn't know the context in which it was taken, you know, who she was or where it was, well, you look at that photograph and say, well, that is a photograph of some dog kennel cages. Or would you say, that's a photograph of a little girl? And the answer is, has to be, that's a photograph of a little girl, which begs the question, why was it taken? She didn't have authority. She accomplished nothing in terms of her duty to investigate by taking that photograph. Well, the photograph shows this little girl in front of animal cages. It does. And are you saying that the photograph demonstrates the child's disability? I'm saying, well, I don't know how much you're going to let me go, ma'am. We will be able to prove. I don't believe that. I think, yeah, you look at the photograph, a good copy of the photograph, it does that. But also, the prior relationship between the defendant and this establishment, she knew about the disability of that girl. Thank you. Okay, thank you. Thank you both for your arguments here today. This matter will be taken under advisement, and we will issue an order in due course.